UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| TAMMY MARIE WEBB, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | No. 2:13-cv-19 <br><br> *Collier / Lee* |

# REPORT AND RECOMMENDATION

Plaintiff Tammy Marie Webb ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI") and disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings and Defendant has moved for summary judgment [Docs. 13, 15]. Plaintiff alleges the Administrative Law Judge ("ALJ") failed to properly consider her impairments under listing 12.07 as a somatoform disorder and failed to properly consider the findings of treating sources. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her applications for SSI and DIB on May 15, 2009, alleging disability as of April 15, 2009 (Transcript ("Tr.") 21, 114-22, 134, 181). Plaintiff's claim was denied initially and upon reconsideration (Tr. 21, 64-73, 77-82) and she requested a hearing before the ALJ. Following a hearing on January 5, 2011, during which Plaintiff was represented by an attorney, the ALJ issued an unfavorable decision on January 18, 2011, finding Plaintiff was not disabled because there were jobs in significant numbers in the national economy that Plaintiff could perform (Tr. 18-35, 41-63). The Appeals Council denied Plaintiff's requests for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-7, 13-16). Plaintiff timely filed the instant action seeking judicial review [Doc. 2].

## II. FACTUAL BACKGROUND

### A. Education and Background

Plaintiff was 33 years old on her alleged disability onset date, April 15, 2009 (Tr. 34). Plaintiff completed a ninth grade education and has past relevant work as a waitress, compliance officer, and fast food cashier (Tr. 34, 45-46, 139, 146, 156).

### B. Medical Records

It is not necessary to engage in a lengthy recitation of Plaintiff's extensive medical records given the specific issues raised by the parties. Instead, this review will only briefly summarize the most pertinent evidence at issue based on the parties' arguments.

In September 2009, Plaintiff underwent a neurodiagnostic study at Vanderbilt University Hospital by Marivi Niebauer, M.D. Considering both EEG and clinical criteria, Dr. Niebauer concluded Plaintiff's seizures "were non-epileptic, most probably psychogenic in nature" (Tr. 313).

2

Subsequently, on October 7, 2009, Dr. Thomas W. Conway referred her for psychological counseling and consideration of rapid eye movement therapy for post traumatic stress disorder ("PTSD") (Tr. 320). The referral states Plaintiff was informed she had a conversion reaction and PTSD from abuse as a child (Tr. 320). Progress notes dated December 17, 2009 by Dr. Ivan Perez, a neurologist, also repeat a diagnosis of PTSD and conversion disorder (Tr. 423).

Dr. Conway treated Plaintiff from June 2009, through January 2010 (Tr. 28, 252-56, 321-31, 436-48). Dr. Conway initially believed Plaintiff's seizures resulted from abrupt withdraw from Xanax (Tr. 29, 323). On June 15, 2009, however, Dr. Conway noted Plaintiff was seeing a specialist about her seizures (Tr. 325) and a few months later, on August 13, 2009, he advised Plaintiff to keep the appointment with her neurologist after he witnessed a seizure (Tr. 323). Dr. Conway's later treatment notes reflect his treatment of Plaintiff for general medical conditions (Tr. 28, 436-47), and his notes contain Plaintiff's reports of seizures (Tr. 322-24, 445). From progress notes dated May 11, 2010, it appears Dr. Conway observed a non-epileptic seizure (Tr. 443). In progress notes dated May 17, 2010, Dr. Conway noted Plaintiff had brought him papers to fill out about her abilities and noted that based on "her history of having seizures on a daily basis and her and her husband stating that these seizures are two to three times per day on a daily basis it appears that she will be unable to participate in any gainful employment" (Tr. 443).

On May 17, 2010, Dr. Conway completed a treating relationship inquiry form (Tr. 376-79). He indicated Plaintiff was unable to sustain an eight hour workday due to her seizure condition and "no ability to perform any gainful employment is expected." (Tr. 379). He indicated that she had non-epileptic seizures daily, severe anxiety, and depression (Tr. 378-79). Dr. Conway also opined that Plaintiff could sit four hours, stand one hour, and walk two hours out of an eight-hour day and

3

was limited to occasionally lifting one to five pounds and never lifting six pounds or more (Tr. 376). Dr. Conway noted that Plaintiff has several seizures a day, which would preclude any regular job, and require a period of rest after each seizure (Tr. 378). He also indicated Plaintiff's ability to concentrate was adversely affected by her medications and she experienced attacks of balance disturbance due to her frequent seizures (Tr. 377-78). As a result, he restricted Plaintiff from working around heights, noise, vibrations, moving machinery, and temperature extremes (Tr. 377).

On June 4, 2010, Joanne Clontz, a clinical psychologist, completed a medical record summation inquiry form (Tr. 416-18). She noted the diagnoses of conversion disorder and that Plaintiff's seizure activity interfered with her life and her ability to work (Tr. 418). Dr. Clontz opined that stress and emotional reactions exacerbated Plaintiff's seizures (Tr. 418). Dr. Clontz opined Plaintiff had a poor ability in performing activities of daily living independently, in concentration, persistence, and pace; in behaving in an emotionally stable manner; and in adapting to stressful circumstances where failure to adapt results in repeated episodes of deterioration (Tr. 417). Dr. Clontz also noted Plaintiff was at "significant risk of injury due to loss of control during seizures activity." (Tr. 418).

### C. Hearing Testimony

As reflected in the decision of the ALJ, the ALJ observed the Plaintiff have a seizure during her hearing (Tr. 27, 58-60). Also at the hearing, Plaintiff appeared in a wheelchair and the ALJ noted she allegedly used it to prevent her from falling during seizures (Tr. 27, 47). Plaintiff testified extensively about her physical and mental problems and claimed to have three seizures per day (Tr. 27, 45-56). In addition, a vocational expert testified (Tr. 57-62).

## III. ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

### B. ALJ's Application of the Sequential Evaluation Process

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since April 15, 2009, the alleged onset date (Tr. 23). At step two, the ALJ found Plaintiff had the following severe combination of impairments: epilepsy (major motor seizures), obesity, affective mood disorder, and anxiety related disorders (Tr. 23). At step three, the ALJ found Plaintiff

5

did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 24-26). The ALJ noted that he considered listings relative to neurological listings and listings 12.04 and 12.06 relative to mental impairments, but that Plaintiff did not meet or medically equal the necessary criteria for any listings. The ALJ discussed at some length his consideration of the "paragraph B" and "paragraph C" criteria as to Plaintiff's mental disorder impairments, but ultimately determined Plaintiff did not satisfy these criteria (Tr. 25-26). As a result, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with nonexertional limitations precluding climbing ladders, ropes and scaffolds and avoiding other hazards, such as operating dangerous machinery or working at unprotected heights. Due to emotional conditions, Plaintiff was also limited to simple, routine, and repetitive tasks but able to adapt to gradual and infrequent changes in the work setting and able to maintain concentration and persistence for simple, routine, repetitive tasks. She was limited to work that requires occasional interaction with the public (Tr. 26). At step four, the ALJ found Plaintiff was unable to perform her past relevant work (Tr. 34). At step five, the ALJ found that Plaintiff was 33, a younger individual, on the alleged onset date and, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 34). These findings led to the ALJ's determination that Plaintiff was not under a disability as of April 15, 2009 (Tr. 35).

## IV. ANALYSIS

Plaintiff asserts two arguments: first, that the ALJ erred in failing to analyze Plaintiff's impairments under listing §12.07 as a somatoform disorder; and second, that the ALJ erred by

6

improperly discounting the findings of Dr. Clontz and Dr. Conway. These arguments are intertwined and will be addressed herein in reverse order.

### A. Standards of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no

7

obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of [her] symptoms. . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding," and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually

8

'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, No. 12-2405, 2013 WL 5496007, at *3 (6th Cir. Oct. 4, 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

### B. Treating Source Opinions

Based on their experiences with Plaintiff and her medical documentation, both Dr. Conway and Dr. Clontz provided treating source statements on behalf of Plaintiff that support a finding of disability based on Plaintiff's alleged several seizures a day. The ALJ discounted these opinions basically finding they relied heavily upon Plaintiff's self-reports, reports the ALJ found not credible, and because they were not well supported and were inconsistent with the medical evidence and Plaintiff's "benign clinical presentations." (Tr. 27-28, 32).

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is settled: A treating physician's opinion is entitled to complete deference if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating

9

physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has reiterated that remand may be required when the ALJ fails to specify the weight afforded to a treating physician's opinion and fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling. *Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011). As stated in *Cole*, "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned.'" *Id*. at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)). In the same vein, the Sixth Circuit also recently took issue with a stated good reason that the treating physician's opinion "conflicted with other evidence," noting the allegedly conflicting evidence must be specified and "must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 377 (6th Cir. 2013). The Sixth Circuit further stated that "[a] more rigorous scrutiny of the treating source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379. Although "a properly balanced analysis might allow the Commissioner to

10

ultimately defer more to the opinions of consultative doctors than to those of treating physicians . . . the regulations do not allow the application of greater scrutiny to a treating source opinion as a means to justify giving such an opinion little weight." *Id.* at 379-80 (citations omitted).

Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Wilson*, 378 F.3d at 544, 547. In *Cole*, the Sixth Circuit recognized that a violation of the "good reasons" rule could only be harmless error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(c)(2). *Cole*, 661 F.3d at 940 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure to specify the weight afforded to a treating physician or to outline sufficiently specific good reasons could be grounds for remand. *Gayheart*, 710 F.3d at 380, Cole, 661 F.3d at 939-40.

A properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from . . . psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Acceptable medical sources are defined in 20 C.F.R. § 416.913(a) and 20 C.F.R. § 404.1513(a) to include licensed physicians and licensed psychologists.

The ALJ found the frequency of Plaintiff's reported seizures was not credible and was not consistent with the treatment records (Tr. 27-28, 32), a finding not directly challenged by Plaintiff.

The ALJ basically discounted the treating source opinions because they relied heavily on Plaintiff's subjective self reports concerning the severity and frequency of her seizures and were inconsistent with other evidence of record (Tr. 28, 32).[1] When a treating physician's opinion is based on a claimant's self reports which are themselves not credible, it is not error to assign little weight to the opinion. *See Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 889 (6th Cir. 2011) (affirming rejection of treating physician's opinion which relied on the "false record" supplied by the claimant). None of the neurological specialists identified limitations to the extent opined by Dr. Conway (Tr. 231-34, 260-62, 304-17, 421-25). In addition, the functional assessments of the state agency physicians also support the ALJ's decision to accord little weight to Dr. Conway's opinion (Tr. 275, 278). The ALJ also found Dr. Clontz's opinion was based mainly upon Plaintiff's self- reports and the reports of her husband, was not well supported by medically acceptable clinical findings and laboratory diagnostic techniques, and was inconsistent with the other evidence of record (Tr. 32). The ALJ noted Dr. Clontz did not find Plaintiff could not care for her family (Tr. 32, 429-34). Among other things, the ALJ also noted that Plaintiff reported that she wanted to start exercising and that meditation was helpful (Tr. 32).

The assessment of a psychological examiner, Donna Abbott, M.A., supports the ALJ's decision to accord little weight to Dr. Clontz's opinion (Tr. 30-32, 280-84). The ALJ noted in July 2009, Ms. Abbott opined that Plaintiff could adequately relate, her social interaction did not appear to be significantly limited, and she has some friends who come over to see her every now and then,

---

[1] Plaintiff does not challenge the ALJ's determination that her emergency room treatment demonstrated normal physical examinations; that physicians and specialists found no objective reason for Plaintiff's seizure disorder; that she had normal findings on EEGs and CT scans of her head; or that she had normal neurological examination and normal strength. To the contrary, Plaintiff notes there are no objective studies that can show the existence of somatoform disorder.

12

or call to check on her sometimes; Plaintiff could follow directions and questions did not have to be repeated excessively; and Plaintiff could attend and concentrate and, from a mental standpoint, she should be able to maintain a routine (Tr. 25, 282-83). Ms. Abbott estimated Plaintiff's intellectual functioning as average, and Plaintiff could set goals, make plans to achieve these goals and work in proximity to others (Tr. 30). In addition, and contrary to her hearing testimony she had three seizures a day (Tr. 47-48), Plaintiff told Ms. Abbott her seizures occurred four to seven days apart and sometimes ten days apart. (Tr. 280).

The assessments of state agency psychologists Cynthia Jackson, Ph.D., and Larry W. Welch, EED, also support the ALJ's decision to accord little weight to Dr. Clontz's opinion as they opined Plaintiff could understand and remember simple and detailed tasks, sustain concentration, persistence and pace for periods of at least two hours, interact with the public, co-workers and supervisors, adapt to infrequent changes, carry out very short and simple instructions, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation and set realistic goals or make plans independently of others, as noted by the ALJ (Tr. 33, 299-301, 350-52).

In addition, as discussed by the ALJ, Plaintiff reported daily activities in conflict with Dr. Clontz's opinion because Plaintiff takes care of her personal needs, including taking her medication; she cooks, cleans, washes dishes, vacuums, folds clothes, grocery shops, visits her mother at least once a week, visits with family, and takes care of her husband and children, on a good day (Tr. 31, 169-73, 282).

To the extent both doctors opined Plaintiff was disabled or could not be expected to work,

13

a treating physician cannot opine that a claimant is disabled, as an opinion that an individual cannot work is not a medical opinion entitled to any weight and is instead an issue reserved to the Commissioner. "When a treating physician . . . submits an opinion on an issue reserved to the Commissioner such as whether the claimant is 'disabled' or 'unable to work' the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010); *see also* 20 C.F.R. § 404.1527(d)(1)-(2) ("Opinions on some issues, such as the examples that follow, are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case . . . .").

In summary, the ALJ noted substantial evidence to support his decision to give little weight to Dr. Conway's and Dr. Clontz's opinions, both of which rely on the credibility of Plaintiff's self-reports, and he articulated sufficient reasons for discounting their opinions. While the ALJ could have made contrary findings, I **FIND** he properly considered these treating source opinions and explained his reasons for his determination the opinions were entitled to only little weight.

### C. Listing for Somatoform Disorders

Plaintiff argues the ALJ erred in failing to analyze whether she satisfies the requirements of listing 12.07, the listing for somatoform disorders. As a general rule, if the claimant has an impairment that matches or is substantially equivalent to a listed impairment, the claimant is disabled *per se*. *Gambill v. Bowen,* 823 F.2d 1009, 1011 (6th Cir. 1987). It is Plaintiff's burden to prove her impairments meet or medically equal a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146, (1987). To do so, she must demonstrate that her impairment meets the applicable impairment listing or present medical evidence that shows how her impairment is medically equivalent to a listed impairment. *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001); *Land v. Sec'y of Health & Human*

14

*Servs.,* 814 F.2d 241, 245 (6th Cir. 1986). In order to meet the requirements of a listed impairment, a claimant must meet all the elements of the listed impairment. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) ("lack of evidence indicating the existence of all the requirements of [a listing] provides substantial evidence to support finding that claimant did not meet the [l]isting)). Substantial evidence exists to support a finding that the claimant does *not* meet the listing if there is a lack of evidence indicating the existence of all of the requirements of a listed impairment. *Hale,* 816 F.2d at 1083. It is not sufficient to come close to meeting the requirements of a listing. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) (decision to deny benefits affirmed where medical evidence almost establishes a disability under listing).

Listing 12.07, a mental disorder listing, is characterized by:

> [P]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. "These physical symptoms may cause the individual to take medicine frequently, see a physician often and alter life patterns significantly." The individual may have an "[u]nrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;" and may show "[m]arked restriction of activities of daily living[,] [m]arked difficulties in maintaining social functioning[,] [d]eficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)[,] or [r]epeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior)."

*Buxton v. Halter,* 246 F.3d 762, 764 n.1 (6th Cir. 2001) (quoting 20 C.F.R. pt. 404, subpt. P, app.

15

1, § 12.07).[2]

Plaintiff argues the lack of objective findings for her seizure disorder, the various opinions that her seizure disorder is non-epileptic in nature and psychogenically based, and her diagnoses of a conversion disorder and PTSD supports a finding that her seizure activity satisfies listing 12.07. The government responds that Plaintiff does not meet part A of Listing 12.07 and that even if she did, she does not meet part B of the listing.

The ALJ extensively and thoroughly reviewed Plaintiff's complaints of seizure activity since December 2007 (Tr. 28-30); recognized various physicians and specialists could not find any objective reason for Plaintiff's seizure disorder (Tr. 28); noted normal objective findings on EEGs, and CT scans of Plaintiff's head (Tr. 28-30); and also noted various physicians and specialists of record indicated Plaintiff's seizures were psychogenic or non-epileptic in nature (Tr. 29). However, he did not specifically do so in the context of Listing 12.07. Even if Plaintiff could demonstrate she

---

[2] Listing 12.07 provides, in relevant part:

Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented by evidence of one of the following:
. . . .
    2. Persistent nonorganic disturbance of one of the following:
    . . . .
        e. Movement and its control (e.g., . . . ***psychogenic seizures***, . . .
        **AND**
B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07 (emphasis added).

meets part A of Listing 12.07, however, the ALJ found her condition does not meet or equal part B of Listing 12.04 or Listing 12.06, other mental impairment listings. Although the ALJ did not specifically address Listing 12.07, the ALJ did specifically address the part B criteria found at Listing 12.07 when addressing Listing 12.04 and Listing 12.06 in his review of Plaintiff's mental impairments.

The ALJ found Plaintiff had only mild restrictions in her activities of daily living. The ALJ noted Plaintiff takes her own medications, does some cooking and cleaning including washing dishes and vacuuming, folds clothes, grocery shops, shops once a week with her family, relaxes with her family, takes care of her husband and children on a good day, and cares for her own personal needs (Tr. 25, 31-32, 169-72, 282). He noted Ms. Abbott observed Plaintiff to present a clean and casual appearance (Tr. 25). Thus, while there is evidence to the contrary, substantial evidence supports the ALJ's determination that Plaintiff has mild restrictions in her activities of daily living.

With respect to the ALJ's finding of moderate difficulties in social functioning, the ALJ again relied on the clinical interview performed by Ms. Abbott who noted Plaintiff could adequately relate, her social interaction did not appear to be significantly limited, and she has some friends who saw her now and then or called to check on her sometimes (Tr. 25, 282). The ALJ also noted Plaintiff has a valid driver's license but does not drive due to her seizures (Tr. 25, 280). In addition, in July 2009, Plaintiff reported visiting with family weekly and no problems getting along with family, friends and neighbors and the ALJ noted she had not been doing as many family activities since her seizures became so bad (Tr. 31, 173-74). While there is again evidence to the contrary, there is also substantial evidence supporting the ALJ's finding of moderate limitations in Plaintiff's social functioning.

17

The ALJ also discussed concentration, persistence or pace as listed under part B, noting Ms. Abbott opined Plaintiff could attend and concentrate and, from a mental standpoint, should be able to maintain a routine (Tr. 25, 283). Additionally, Plaintiff could follow directions and respond to questions (Tr. 282). Therefore, the ALJ properly found Plaintiff with no more than moderate difficulties in concentration, persistence or pace (Tr. 25). The ALJ also found the evidence of record did not demonstrate episodes of decompensation of an extended duration (Tr. 25).

Substantial evidence supports the ALJ's conclusion that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, and that Plaintiff did not satisfy the B criteria. Therefore the ALJ properly found that Plaintiff did not meet any listing of impairment, including Listing 12.07.

Accordingly, after reviewing all of Plaintiff's arguments, I **CONCLUDE** the decision of the ALJ was supported by substantial evidence as Plaintiff failed to prove her impairment met or equaled Listing 12.07.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** that:[3]

(1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**.

(2) The Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**.

(3) The Commissioner's decision denying benefits be **AFFIRMED**.

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).